Filed 2/17/23  P. v. Anamani CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>TOTI ANAMANI,<br><br>     Defendant and Appellant. | A163772<br><br>(San Francisco City & County<br>Super. Ct. No. 21008826) |

Defendant's postrelease community supervision (PRCS) was revoked and reinstated in September 2021, and he appeals from the trial court's order extending his PRCS termination date 373 days beyond the original three-year term.  The trial court set the new termination date after concluding that defendant's supervision had been tolled for two periods of time (the tolling periods).  Defendant concedes that PRCS may be tolled when a defendant absconds from supervision.  (Penal Code[1], § 3456, subdivision (b).)  However, he contends that he was incarcerated in Solano County during the tolling periods, and there was no basis to toll and extend his PRCS.  We find that the trial court

_____

[1] All further statutory references are to the Penal Code unless otherwise stated.

1

did not have a sufficient basis to toll defendant's PRCS and reverse the portion of the court's order extending defendant's PRCS termination date.

## BACKGROUND

After his release from prison, defendant was placed on PRCS on October 3, 2018.

On September 9, 2021, the San Francisco Adult Probation Department (APD) filed a petition to revoke defendant's PRCS, alleging that defendant "failed to report upon release from Solano County custody," and "suffered a new arrest on 1/21/21 in Fairfield." The probable cause declaration attached to the petition stated that, as conditions of his PRCS, defendant was required to comply with all instructions from the APD and was prohibited from engaging in illegal conduct. According to the declaration, defendant violated these conditions as follows: "[Defendant] failed to report to this Department upon release from Solano County custody. While on warrant status [defendant] was arrested in Fairfield, California on 11/18/19. An arrest warrant was obtained on 11/20/19. Because the warrant appears to have been removed from the system, another warrant was obtained on 10/6/20."[2] The APD recommended that the court

---

[2] The last two quoted sentences discuss the warrants obtained from the San Francisco Superior Court on November 20, 2019, and October 6, 2020. The record does not contain any details regarding the other warrant mentioned in the declaration (i.e., the basis for defendant being "on warrant status" as of November 18, 2019).

2

set a new PRCS termination date of June 11, 2023, based on 617 days that defendant's supervision had allegedly been tolled.[3]

On September 10, 2021, the court held a hearing, appointed counsel for defendant, revoked defendant's PRCS, and continued the matter for arraignment. At a subsequent hearing, defendant admitted that he was in violation of his PRCS, with the prosecutor and defendant stipulating that the "PRCS report dated September 8, 2021" served as the factual basis for defendant's admission.[4]

The court reinstated defendant's PRCS and continued the matter for sentencing, directing the parties to submit briefing on defendant's PRCS termination date. The prosecutor asked the court to adopt the termination date calculated in the PRCS report. Defendant argued that he had reached his maximum PRCS term. His counsel filed a declaration stating that

[3] The 617 days were broken down into the following three periods: May 15, 2019, to May 31, 2019, when defendant's PRCS was revoked for an unrelated PRCS violation; November 20, 2019, to August 11, 2020, when the first San Francisco warrant at issue in this case was outstanding; and October 6, 2020, to September 4, 2021, from issuance of the second San Francisco warrant to its service.

[4] The reporter's transcript refers to the "PRCS report dated September 8th, 2021." The supervising agency seeking to revoke PRCS is required to include, along with the petition, "a written report that contains additional information regarding the petition, including the relevant terms and conditions of [PRCS], the circumstances of the alleged underlying violation, the history and background of the violator, and any recommendation." (§ 3455, subd. (a).) This required information is set forth in the APD's "Declaration for Probable Cause Hearing," and this declaration appears to be the referenced "PRCS report."

3

defendant had been arrested in Fairfield, California, on November 18, 2019, and that he was arraigned in the current matter "based on" that arrest. Counsel declared that defendant was in custody in Solano County from November 18, 2019, until his transfer to San Francisco jail on September 4, 2021. Defendant argued that, because a person "in the state's actual custody is a status that in no situation can be described as absconding," and because tolling under section 1203.2 could not extend a maximum PRCS term, the court should terminate his PRCS on its own motion.

The court declined to adopt either proposed PRCS termination date. Instead, the court determined that defendant's supervision had been tolled from November 20, 2019, until August 11, 2020, and from October 6, 2020, until January 21, 2021, for a total of 373 days. The court set a PRCS termination date of October 10, 2022.[5] Defendant timely appealed.

## DISCUSSION

The Legislature set a maximum three-year term for PRCS. (§§ 3455, subd. (e); 3456, subd. (a)(1).) At issue in this appeal is whether the trial court properly established the tolling periods and set a PRCS termination date of October 10, 2022. Both parties agree that time during which a defendant absconds from PRCS does not count when calculating a PRCS termination date. (§§ 3455, subd. (e); 3456, subd. (b).) However, they disagree

---

[5] In supplemental briefing requested by this court, the parties informed us that defendant's PRCS was not terminated on October 10, 2022. Defendant remains on PRCS, so this appeal is not moot.

4

about whether defendant absconded during the tolling periods, and they also disagree about whether PRCS can be extended beyond the maximum term to account for time during which supervision is revoked pursuant to section 1203.2. As set forth below, we find no basis for the trial court's tolling.

"A person shall not remain under supervision or in custody pursuant to this title on or after three years from the date of the person's initial entry onto [PRCS], except when his or her supervision is tolled pursuant to Section 1203.2 or subdivision (b) of Section 3456." (§ 3455, subd. (e); see also § 3456, subd. (a)(1) [the supervising agency "shall maintain postrelease supervision over a person . . . until . . . [¶] . . . the person has been subject to postrelease supervision pursuant to this title for three years at which time the offender shall be immediately discharged from postrelease supervision."].) However, "[t]ime during which a person on postrelease supervision is suspended because the person has absconded shall not be credited toward any period of postrelease supervision." (§ 3456, subd. (b).)

Although the parties disagree over whether a three-year maximum PRCS term can be extended to account for time during which PRCS is revoked under section 1203.2, subdivision (a), we need not decide this issue because section 1203.2 was not a basis for the trial court's ruling.[6] Defendant's PRCS was revoked once on May 15, 2019, and reinstated on May 31, 2019, and the court

---

[6] Defendant discusses tolling under section 1203.2, subdivision (a) in his opening brief in "an abundance of caution," while acknowledging that the court did not appear to base its tolling decision on that statute.

next revoked his PRCS in September 2021. The trial court determined that the tolling periods ran from November 20, 2019, until August 11, 2020, and from October 6, 2020, until January 21, 2021. The tolling periods were thus not based on the court's revocation of PRCS under section 1203.2, leaving only the question of whether section 3456, subdivision (b) supported the court's tolling analysis.

Because tolling under section 3456, subdivision (b) occurs when "the person has absconded," we must determine the meaning of the word "absconded." As this is a question of statutory interpretation, we conduct an independent review of the statute. (*People v. Tran* (2015) 61 Cal.4th 1160, 1166.) "In doing so, ' "our fundamental task is 'to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.' " ' " (*Ibid*.) "We begin by examining the words of the statute, affording them ' " 'their ordinary and usual meaning and viewing them in their statutory context' " ' [citation], for ' "if the statutory language is not ambiguous, then . . . the plain meaning of the language governs." ' " (*People v. Colbert* (2019) 6 Cal.5th 596, 603.)

Neither party claims that section 3456, subdivision (b) is ambiguous, and both parties agree that the plain meaning of the word "abscond" governs. "Abscond"—although not defined in the Penal Code—has an ordinary meaning of "to depart secretly and hide oneself." (Merriam-Webster Dict. Online (2022) <https://www.merriam-webster.com/dictionary/abscond> [as of February 10, 2023]; cf. *People v. Nuckles* (2013) 56 Cal.4th 601,

6

610 [quoting the dictionary definition of absconding as "depart[ing] secretly and hid[ing] oneself"].) Black's Law Dictionary similarly defines "abscond" as "[t]o depart secretly or suddenly, esp. to avoid arrest, prosecution, or service of process." (Black's Law Dictionary (11th ed. 2019).) The question, then, is whether there is sufficient evidence that defendant departed secretly and hid himself from supervision during the tolling periods. (Cf. *People v. Downey* (2000) 82 Cal.App.4th 899, 917 [sentencing determinations subject to substantial evidence review].)

Here, the court did not make an express finding that defendant absconded from PRCS during the tolling periods, and we find no support in the record for an implied finding. The APD did not allege that defendant absconded in the PRCS revocation proceeding, and defendant made no such admission. Instead, the PRCS report stated that defendant violated the condition to obey all instructions from the APD when, on an unspecified date, he "failed to report to this Department upon release from Solano County custody." There is no evidence showing when defendant was "release[d] from Solano County custody," the exact date of his missed reporting, or how much time passed between it and defendant's November 18, 2019 arrest. The "program referrals" section of the PRCS report indicates that defendant last reported on October 31, 2019, but the record does not reveal when defendant was required to report after that date. Defense counsel below declared that defendant was incarcerated in Solano County from November 18, 2019, through September 4, 2021

7

(which includes the tolling periods), and the Attorney General concedes this fact on appeal. In addition, the record does not establish whether the APD was aware or unaware of defendant's whereabouts (although we note that the APD obtained the first warrant at issue on November 20, 2019, only two days after defendant was arrested in Fairfield). The record thus provides no factual basis to conclude that defendant absconded during the tolling periods by departing secretly and hiding himself from supervision.

## DISPOSITION

The court's order extending defendant's PRCS termination date for 373 days to October 10, 2022, is reversed. As defendant's three-year PRCS term has expired, the matter is remanded for the trial court to enter an order terminating defendant's PRCS.

BROWN, J.

WE CONCUR:

STREETER, ACTING P. J.
GOLDMAN, J.

*People v. Anamani* (A163772)

8